**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| OUR CLEAN OCEANS INC., *a California corporation*,<br><br>                    Plaintiff,<br><br>          v.<br><br>CORPORATE E-WASTE SOLUTIONS, *a California corporation*,<br><br>                    Defendant. | Case No.: 8:25-cv-02311-MWC-KES<br><br>**CONSENT DECREE**<br><br>**JS-6** |

## CONSENT DECREE

This Consent Decree (as defined below) is entered into as of the Effective Date (defined below) between Our Clean Oceans, Inc. ("OCO") and Corporate eWaste Solutions ("CEWS") (each individually as a "Settling Party" or "Party," and collectively, "Settling Parties" or "Parties") based on the following facts:

**WHEREAS,** Plaintiff OCO is a 501(c)(3) non-profit corporation organized under the laws of the State of California, with its corporate headquarters in Newport Beach, California;

**WHEREAS,** OCO is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Orange County from all sources of pollution and degradation;

**WHEREAS**, Defendant CEWS owns and operates a facility at 331 Cliffwood Park Street, Brea, CA 92821, under Waste Discharger Identification number 8 30I028501 ("Facility");

**WHEREAS**, the Facility's industrial activities consist of e-waste recycling through the separation of materials into commodity units such as plastic, metals, and glass through various processing technologies. The Facility is categorized under Standard Industrial Classification ("SIC") Code 5093, Scrap and Waste Materials;

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ ("General Permit" or "Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, it is alleged that CEWS's operations at the Facility have resulted in discharges of pollutants into waters of the United States that are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

2

**WHEREAS**, the General Permit generally requires all permittees to comply with, inter alia, the following mandates: (1) develop and implement a Storm Water Pollution Prevention Plan ("SWPPP") and a storm water Monitoring Implementation Plan ("MIP"), (2) control pollutant discharges using, as applicable, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants in storm water discharges through the development and application of Best Management Practices ("BMPs"), which must be detailed in and timely updated in the SWPPP, (3) reduce and eliminate discharges as necessary to comply with applicable water quality standards, and (4) implement a monitoring and reporting program, including the MIP, designed to assess compliance with the Permit;

**WHEREAS**, on July 11, 2025, OCO issued a notice of intent to file suit ("60-Day Notice Letter") to CEWS, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director of the Santa Ana Regional Water Quality Control Board ("Regional Board"), and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act and the General Permit;

**WHEREAS**, OCO's 60-Day Notice Letter alleged violations of the General Permit and the Clean Water Act for CEWS's discharges of pollutants into storm drains and surface waters, including the Coyote Creek, its tributaries, and the Pacific Ocean (collectively, "Receiving Waters");

**WHEREAS**, CEWS denies any and all allegations in the 60-Day Notice Letter relating to the Facility;

**WHEREAS**, the Settling Parties agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to solving the allegations set forth in the 60-Day Notice Letter without further proceedings; and

**WHEREAS**, all actions taken by CEWS pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local laws, rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2. Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3. The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4. Our Clean Oceans has standing to bring this action.

5. The Court shall retain jurisdiction over this action for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree, or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term (as defined below) of this Consent Decree.

**I.  OBJECTIVES**

6. It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged or which could have been alleged by OCO in its Complaint and 60-Day Notice Letter.

7. In light of these objectives and as set forth fully below, CEWS agrees to comply with the provisions of this Consent Decree.

**II.  AGENCY REVIEW AND DEFINITIONS**

**A.  Agency Review and Consent Decree**

4

8.     Agency Review. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the United States EPA (the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier ("Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9.     Court Notice. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

10.     Entry of Consent Decree. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

**B.     Definitions**

11.     Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

a.     "BAT" means the Best Available Technology Economically Achievable.

b.     "BCT" means the Best Conventional Pollutant Control Technology, and collectively with BAT is referred to herein as "BAT/BCT."

c.   "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

d.   "Claim(s)" means any and all claims, causes of action, demands, judgments, damages, lawsuits, crossclaims, counterclaims, attorneys' fees, costs, expenses, injuries, liabilities, fees, fines, penalties, losses, expert fees, consultant fees, expenditures, charges or any other monetary amount of any nature whatsoever, whether currently known or unknown, fixed or contingent, matured or unmatured, liquidated or unliquidated, direct or consequential, foreseen or unforeseen, anticipated or unanticipated, accrued or unaccrued, compensatory or punitive, and whether sounding in tort, contract, equity, strict liability or any other statutory, regulatory, administrative or common law cause of action of any sort, nature, character or kind.

e.   "Consent Decree" means this Agreement and any attachments or documents incorporated by reference.

f.   "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

g.   "Discharge Point" means each discharge location designated in the then-current SWPPP for the Facility.

h.   "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

i.   "Entry Date" means the day this Consent Decree is approved and entered by the Court.

j.    "Forecasted Rain Event" means a forecasted rain event with a 40% or greater chance of precipitation as determined by the National Oceanic and Atmospheric Administration for "FW0063 Fullerton CSU (F0063)."[1]

k.    "MIP" means a Monitoring Implementation Plan.

l.    "NAL" means Numeric Action Level.

m.    "NEL" means Numeric Effluent Limitation.

n.    "PPT" means Pollution Prevention Team.

o.    "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A.1 of the General Permit.

p.    "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B.1 of the General Permit.

q.    "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

r.    "Sample Point" means each designated industrial storm water monitoring location identified in the then-current SWPPP for the Facility.

s.    "SMARTS" means the California State Water Resources Control Board's Storm Water Multiple Application and Report Tracking System.

t.    "SWPPP" means a Storm Water Pollution Prevention Plan.

u.    "Term" means the period between the Effective Date and the "Termination Date."

v.    "Termination Date" means:

---

[1] Available at https: https://forecast.weather.gov/MapClick.php?lat=33.9229&lon=-117.8888.

i.      One (1) year from the Effective Date of this Consent Decree; or

ii.      Seven (7) days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to termination as defined in Paragraph v.i if resolution extends beyond Termination; or

iii.      Seven (7) days from the Facility's completion of all payments and other affirmative duties required by this Consent Decree if any are pending at the time of Termination as defined in Paragraph v.i.; or

iv.      Seven (7) days from the date of the California State Water Resources Control Board's approval of CEWS' Notice of Intent to Terminate ("NOT") the permit.

w.      "Wet Season" means the period beginning October 1st of any given calendar year and ending June 30 of the following calendar year.

## III.    COMMITMENTS OF THE SETTLING PARTIES

### A.      Storm Water Pollution Control Best Management Practices

12.      Current and Additional Best Management Practices. CEWS shall implement the BMPs identified in its SWPPP and the BMPs described herein and shall develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree and the General Permit.

13.      Structural and Non-Structural BMPs for the Facility. Within sixty (60) days of the Effective Date, CEWS shall develop and implement the following BMPs at the Facility:

a.      Employ a sweeping program using a regenerative air or vacuum sweeper with the capacity to collect and retain PM-10 (10 μm) particles on all paved surfaces at least once per month, and

8

employ hand sweeping, blowing, and/or vacuuming on a weekly schedule in all areas;

b. Perform hand sweeping, blowing, and/or vacuuming on all paved surfaces prior to Forecasted Rain Events as well as the regenerative air or vacuum sweeping prior to Forecasted Rain Events whenever feasible;

c. Enhance existing indoor sweeping protocol to control fine particulates and minimize tracking by daily inspecting of indoor sorting areas, dismantling areas, and access ways at the end of shift(s), sweeping twice daily before lunch and the end of the shift, and conducting regular training to ensure consistency;

d. Enhance existing use of roll-off totes in the outdoor pick-up area to reduce potential exposure of metals particulates by loading indoors, and eliminating the use of the yellow bins outdoors;

e. Ensure all outdoor totes and bins are not over-filled, closed when not in use, and covered during rain events and/or remove empty totes with galvanized reinforcement cages and empty galvanized storage baskets from outdoor areas, especially during rain events;

f. Enhance its pre-rain protocol with the deployment of additional wattles, filter socks, and sandbags, including the deployment of sandbags to slow stormwater flow at the curb of the parking lot on the west side of the facility and configuring anchored wattles and filter socks in multiple layers to achieve maximum contact time with stormwater prior to discharge at DP1 and DP2. CEWS shall procure and utilize Filterexx Envirosoxx and/or Biochar socks or equivalent;

g. During the Wet Season, as necessary, replace or maintain the wattles, socks, and/or filter media when degraded or ineffective, including when there are rips, tears or other visual damage, and/or sampling data demonstrating the filtration devices are not sufficiently reducing pollutant concentrations;

h. Institute a formal pre-rain protocol throughout the Wet Season to be implemented within twenty-four (24) hours prior to a Forecasted Rain Event, involving visual inspection of any filters, socks, and wattles deployed at the site, removal of any exposed waste material to the maximum extent practicable, and relocation of uncontained or uncovered debris bins and trash receptacles under cover;

i. To the extent feasible, within twenty-four (24) hours prior to a Forecasted Rain Event, cover all industrial materials, debris and scrap bins, and trash cans with tarps, lids, or other coverings sufficient to prevent exposure to rainfall, including without limitation those stored outside and where roof protection is inadequate, or otherwise move them into a covered structure adequate to prevent exposure to rainfall;

j. Institute an equipment and vehicle maintenance program that ensures:

  i. no maintenance activities occur outside during wet weather, unless such maintenance is required for safe operation of the Facility (i.e. a forklift breaks down in a location that prevents ingress/egress); and

  ii. maintenance activities occur only in designated work areas or beneath covered maintenance areas; and

k.      Within fourteen (14) days of the above BMPs being implemented, CEWS shall confirm to OCO via email, with photographs where photographic documentation is feasible, that such BMPs have been implemented as set forth above.

**B.      Sampling at the Facility**

14.     <u>Regulatory Sampling</u>. During the Term, CEWS shall collect samples of storm water discharge from each Sample Point identified in the Facility's SWPPP from QSEs as required by General Permit § XI.B. If CEWS is unable to collect samples for a potential QSE, CEWS shall provide an explanation via email within fourteen (14) days of a written request by OCO.

15.     <u>Sampling Parameters</u>. All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1, with the exception of any investigative background sampling performed by CEWS that only requires analysis of specific, limited parameters.

16.     <u>Laboratory and Holding Time</u>. Except for pH samples, CEWS shall deliver all samples to a California-certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a portable instrument that is calibrated and used according to the manufacturer's instructions.

17.     <u>Detection Limit</u>. CEWS shall request that the laboratory use analytical methods adequate to detect the individual contaminants at or below the values specified in the General Permit and Table 1 below.

18.     <u>Reporting</u>. CEWS shall provide OCO with notice via email within fourteen (14) days of uploading and certifying laboratory results from a collected sample to SMARTS in accordance with the General Permit.

**C.    Reduction of Pollutants in Discharges**

19.    <u>Table 1 Numeric Limits</u>. CEWS shall develop and implement BMPs for storm water discharges from the Facility that reduce pollutant concentrations to levels below those in Table 1.

TABLE 1[2]

| Parameter | Numeric Limit | Source of Limit |
|---|---|---|
| Zn | 0.26/0.158 mg/L | NAL/NEL |
| Cu | 0.0332/0.027 mg/L | NAL/NEL |
| Cd | 0.0053 mg/L | NAL |
| Pb | 0.262/0.106 mg/L | NAL/NEL |
| Fe | 1.0 mg/L | NAL |
| Al | 0.75 mg/L | NAL |
| COD | 120 mg/L | NAL |
| TSS | 100 mg/L | NAL |
| pH | 6.0-9.0 s.u. | NAL |
| O&G | 15 mg/L | NAL |
| Se | 0.005 mg/L | NAL |
| Ni | 1.02 mg/L | NAL |
| Cr (Total) | 0.55 mg/L | CTR |

20.    <u>Table 1 Exceedances</u>. An "Exceedance" of Table 1 is defined consistent with Section I.N.76 and Section V.C.1 of the General Permit.

21.    <u>Action Plan for Table 1 Exceedances</u>. During the Term, if CEWS's storm water samples demonstrate an Exceedance as defined above, CEWS shall prepare and submit to OCO a plan for reducing and/or eliminating the relevant discharge of pollutants for the Facility ("Action Plan"). The complete Action Plan

---

[2] The numeric limits listed in Table 1 are intended to be consistent with the then-effective parameter limits provided by the General Permit or other applicable source, e.g., if the applicable source for Zinc establishes its NAL and the NAL for Zinc is either increased to 0.3 mg/L or decreased to 0.20 mg/L, such new NAL, and not 0.26 mg/L, shall be used as the Table 1 limit for the purposes of this Consent Decree as if set forth herein.

12

shall be submitted to OCO by August 15th of the Reporting Year subsequent to the Reporting year in which an Exceedance occurred.

       a.    Action Plan Requirements. Each complete Action Plan submitted shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the numeric limit(s); (2) an assessment of the source of each contaminant exceedance; (3) the identification of additional BMPs that shall be implemented to achieve compliance with the numeric limit(s) as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. Within fourteen (14) days of the BMPs set forth in the Action Plan being implemented, CEWS shall confirm to OCO via email, with photographs where photographic documentation is feasible, that such BMPs have been implemented as set forth in the Action Plan.

       b.    Action Plan Review. OCO shall have thirty (30) days upon receipt of CEWS's complete Action Plan to provide CEWS with comments. Within fourteen (14) days of receiving OCO's proposed revisions to an Action Plan, CEWS shall consider each of OCO's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

13

c. CEWS shall revise the then-current SWPPP to reflect the changes required by the Action Plan, as required by the General Permit.

d. Action Plan Payments. CEWS shall pay Four Thousand Dollars ($4,000) each time an Action Plan is required to be submitted to OCO under this Section (not to exceed one Action Plan). Payments are due at the same time that the applicable Action Plan is submitted and shall be made to: Our Clean Oceans, sent via overnight carrier to 2618 San Miguel Suite 1885, Newport Beach, CA 92660. Failure to submit a payment within fourteen (14) days of when it is required under this Paragraph will constitute a breach of the Consent Decree.

e. Consistent with Paragraph 11.v.iii of this Consent Decree, CEWS's affirmative obligations in this Section (14) shall survive the Termination Date if applicable.

**D. Visual Observations and SWPPP**

22. Storm Water Discharge Observations. During the Term, appropriately trained staff of CEWS shall conduct visual observations during the Facility's operating hours during every rain event. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit, and any successor thereof.

23. Monthly Visual Observations. During the Term, appropriately trained staff of CEWS shall conduct monthly non-storm water visual observations of the Facility. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit, and any successor thereof.

24. Visual Observations Records. CEWS shall maintain observation records to document compliance with Paragraphs 22 and 23. Such records shall include, but not be limited to, the persons who completed the inspection, the date of the inspection, and notes sufficient to describe the completed activity and all observations thereof, including but not limited to: (i) whether BMPs are in proper working condition(s);

14

(ii) whether any repair, replacement, or operation and maintenance is needed for any BMPs; and (iii) other conditions that have the potential to lead to pollutant loading in storm water discharges. CEWS shall provide OCO with a copy of those records within fourteen (14) days of receipt of a written request from OCO for those records.

**E.      Training and Plans**

25.    Employee Training Program. During the Term, prior to the start of the Wet Season, CEWS shall provide a QISP conducted training to personnel responsible for implementing General Permit compliance at the site pursuant to Section X.H.1.f of the General Permit.

26.    SWPPP Revisions.

a.      Initial SWPPP Revisions. CEWS shall amend the Facility's SWPPP to incorporate the requirements in this Consent Decree and comply with the General Permit and submit the complete, updated SWPPP to OCO within sixty (60) days of the Effective Date for OCO's review and comment.  The complete, updated SWPPP shall contain, at a minimum, the following elements:

i.      A pollutant source assessment, including all elements required by section X.G of the General Permit as well as assessments of the potential for the Facility's storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads;

ii.     A detailed narrative description and assessment of each industrial activity with the potential to impact storm water quality occurring at the Facility as required by section X.G of the General Permit. This assessment shall include each dust and particulate generating activity occurring at the Facility, the associated pollutants, and the potential for

each of these activities to disperse pollutants to the outdoors through the Facility's building ventilation system;

iii. Descriptions of all BMPs in accordance with section X.H.4 of the General Permit, including the BMPs required by this Consent Decree;

iv. Identification of any run-on and/or aerial deposition sources that potentially impact the Facility, measures to investigate the magnitude of any impact, and BMPs to mitigate any run-on sources;

v. Site maps that comply with section X.E of the General Permit and provisions of this Consent Decree, including identification of all storm drains at the Facility, sheet flow discharge from driveways, roof downspouts and flow directions, naming of the discharge/sample locations consistent with the SWPPP, separation of industrial and non-industrial areas; dust and particulate generating areas; the shop, and hazardous waste storage areas;

vi. A MIP as required by sections XI and X.I of the General Permit, including a detailed description of each sample location (i.e. storm drain or sheet flow), all discharge locations, and representative sampling reduction justification if required;

vii. A designation (by position/title) of employees responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation, e.g., visual inspection of each specific area, monitoring each specific BMP, sampling, etc.; and

b. Additional SWPPP Revisions.

i.      Within thirty (30) days after approval of any Action Plan by OCO, CEWS shall revise the then-current SWPPP to reflect the changes required by the Action Plan and submit the updated SWPPP to OCO.

**F.      Compliance Monitoring and Reporting**

27.     Document Provision. During the Term, CEWS shall notify and submit documents to OCO as follows:

a.      CEWS shall notify OCO within fourteen (14) days, by electronic mail to the individual(s) designated below at Paragraph 53, when storm water sample analytical results and Facility SWPPP updates are submitted/certified to SMARTS and/or investigative storm water sample analytical results are received from the laboratory. Additionally, CEWS shall notify OCO via email within fourteen (14) days of receipt of any enforcement actions by the Regional Board, the State Board, and/or any state or local agency, county, or municipality.

28.     Compliance Monitoring. CEWS shall partially defray costs associated with OCO's monitoring of CEWS's compliance with this Consent Decree during the Term by paying Five Thousand Dollars ($5,000). The first payment totaling $2,500 shall be made within fourteen (14) days of the Entry Date of this Consent Decree, and the second payment totaling $2,500 shall be made within ten (10) days from the final day of the Wet Season, provided that CEWS has not filed a NOT approved by the California State Water Resources Control Board. The payment(s) shall be made via check, made payable to: Our Clean Oceans, sent via overnight carrier to 2618 San Miguel Suite 1885, Newport Beach, CA 92660. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

**G.     Environmentally Mitigation Project, Litigation Fees and Costs and Costs, Missed Deadlines**

29.     Environmental Mitigation Project. To fund environmental project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities that discharge to waters tributary to the Coyote Creek, CEWS shall make a payment totaling Fifteen Thousand Dollars ($15,000) to the Rose Foundation made within ninety (90) days of the Entry Date, payable to the Rose Foundation for Communities and the Environment and sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

30.     OCO's Fees and Costs. CEWS shall pay a total of Sixty-Two Thousand Five Hundred Dollars ($62,500) to OCO to partially reimburse OCO for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and negotiating a resolution of this matter. The first payment totaling $31,250 shall be made within fourteen (14) days of the Entry Date, and the second payment totaling $31,250 shall be made within thirty (30) days after the first payment. The payment shall be made payable to: Actium LLP, 99 South Lake Avenue Suite 501, Pasadena, California 91101, delivered via wire transfer. Actium LLP shall provide wire instructions within three (3) days of the Entry Date. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

31.     Missed Deadlines. In the event that CEWS fails to submit to OCO any payment, document, report, or communication required by this Consent Decree, CEWS shall pay a stipulated payment of Five Hundred Dollars ($500) per week that such deadline is missed. Such stipulated payments shall be made by check payable to: Our Clean Oceans, sent via overnight carrier to 2618 San Miguel Suite 1885, Newport Beach, CA 92660. CEWS agrees to make the stipulated payment within

twenty-one (21) days after the resolution of the event that precipitated the stipulated payment liability.

## IV.   DISPUTE RESOLUTION

32.   Meet and Confer. Either Party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other Party in writing of the matter(s) in dispute and of the disputing Party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days of the meet and confer.

33.   Settlement Conference. If the Parties cannot resolve the dispute within thirty (30) days from the date of the meet and confer described in Paragraph 32 above, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

34.   In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V.   MUTUAL RELEASE OF LIABILITY AND COVENANTS NOT TO SUE

35.   OCO's Waiver and Release of CEWS. In consideration of the above, upon the Entry Date of this Consent Decree, OCO, on behalf of itself and any and all of its officers, agents, representatives, successors, members, attorneys and assigns, and any other person acting under its direction and control (collectively "Releasors") do hereby absolutely, fully, and forever release, relieve, remise, and discharge CEWS, and its past, present, and future officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and

other representatives, of and from any and all past, present, and future Claims relating to any error, act, or omission occurring from the beginning of time through the Termination Date of this Consent Decree, including, without limitation, the allegations and Claims that were or could have been asserted in the Notice Letter relating to CEWS's activities at the Facility and the Facility's compliance with the CWA and General Permit.

36.    CEWS's Waiver and Release of OCO. In consideration of the above, upon the Entry Date of this Consent Decree, CEWS, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, releases and waives any and all Claims against OCO, its officers and directors, related to the 60-Day Notice Letter, up to and including the Termination Date of this Consent Decree.

37.    The releases provided for herein shall be valid and effective whether the Claims, causes of action, or liability hereby released (*i*) were known or unknown, suspected or unsuspected, or were foreseen or unforeseen based upon the Claims alleged, or which could have been alleged, (*ii*) were based in contract, tort, statute, or otherwise, or (*iii*) arise at law or in equity including, without limitation, any and all Claims for violations of the Clean Water Act which occurred at any time up through the Termination Date of this Consent Decree. These releases shall survive the termination of this Consent Decree, whether by satisfaction of the terms and conditions hereof or operation of law.

38.    Covenant Not to Sue. As of the Effective Date of this Consent Decree, and for a period to and including the Termination Date of this Consent Decree, Plaintiff agrees that neither Plaintiff, its officers, directors, executive staff, members, attorneys, including Actium LLP, nor any individuals or organization under the control of Plaintiff, its officers, executive staff, attorneys or members of its governing board, will serve any 60-day Notice of Violations and Intent to Sue, file any lawsuit, or otherwise pursue any Claim against CEWS or its respective affiliates, past and

20

present employees, operators, officers, directors, officials, consultants, members, principals, agents and representatives, predecessors, successors, or assigns seeking relief for alleged violations of the CWA, or any similar state statutes and/or regulations, including the Porter Cologne Water Quality Control Act (Cal. Water Code § 13000 et seq.), or of the General Permit, related to the Facility. The Parties acknowledge and agree that this provision shall survive the termination of this Agreement, whether by satisfaction of the terms and conditions hereof or by operation of law.

## VI. MISCELLANEOUS PROVISIONS

39. <u>Attorneys' Fees</u>. Other than the payment to Plaintiffs under Section 30, each Party shall bear its own past attorneys' fees and costs relating to the subject matter of this Consent Decree.

40. <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. CEWS maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

41. <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Electronic transfers of original or digital signature shall be deemed to be an originally executed counterpart of this Consent Decree.

42. <u>Authority</u>. The undersigned representatives for OCO and CEWS each certify that s/he is fully authorized by the Party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted electronically shall be deemed binding.

43.     Construction. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

44.     Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

45.     Integration Clause. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

46.     Severability. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

47.     Choice of Law. The laws of the United States shall govern this Consent Decree.

48.     Effect of Consent Decree. Compliance with this Consent Decree does not mean that CEWS is complying with the General Permit, the Clean Water Act, or any other law or adopted regulation.

49.     Negotiated Settlement. The Settling Parties have negotiated this Consent Decree and agree that it shall not be construed against the Party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Party.

50.     Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must

be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

51. Assignment. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. CEWS shall notify OCO within ten (10) days of any assignment.

52. Force Majeure. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any Party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

53. Correspondence. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

| If to OCO: | If to CEWS: |
|---|---|
| Our Clean Oceans, Inc. | Corporate eWaste Solutions |
| Compliance Manager | Chun Yu Eric Chu |
| 2618 San Miguel, Suite 1885 | 331 Cliffwood Park St. |
| Newport Beach, CA 92660 | Brea, CA  92821 |
| Email: reporting@ourcleanoceans.org | Email: echu@cews.com |
| Phone: (833) 241-8799 | Phone: (888) 388-2397 |
| | |
| With copies to: | With copies to: |
| Mares Legal, P.C. | Michel and Associates |
| Tim Mares | W. Lee Smith |
| 240 W Chapman Ave., Suite 200 | 18  E. Ocean Blvd., Ste. 200 |
| Orange, CA 92866 | Long Beach, CA 90802 |
| Email: tim@mareslegalpc.com | Email: lsmith@michellawyers.com |
| Phone: (310) 940-7433 | Phone: (562) 216-4444 |

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving Party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

54.    If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

Dated: <u>February 11</u>          , 2026          By: <u>*s/ Gaspare Guarrasi*</u>
                                                            Gaspare Guarrasi
                                                            Executive Director
                                                            Our Clean Oceans, Inc.


Dated: <u>February 12</u>          , 2026          By: <u>*s/ Chun Yu Eric Chu*</u>
                                                            Chun Yu Eric Chu
                                                            Chief Executive Officer
                                                            Corporate eWaste Solutions

# FINAL JUDGMENT

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendant.

**IT IS SO ORDERED.**

DATED: April 13, 2026

_____
Honorable Michelle Williams Court
United States District Judge